UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ROBERT P. YATES, JR., )<br>)<br>    Plaintiff, )<br>)<br>  vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Deputy Commissioner of Operations, )<br>Social Security Administration, )<br>)<br>    Defendant. ) | Case No. 2:17 CV 75 ACL |

## **MEMORANDUM**

Plaintiff Robert P. Yates, Jr. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Yates' severe physical and mental impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### **I. Procedural History**

Yates filed his applications for DIB and SSI on June 11, 2014, and June 30, 2014,

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ROBERT P. YATES, JR., )<br>)<br>    Plaintiff, )<br>)<br>  vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Deputy Commissioner of Operations, )<br>Social Security Administration, )<br>)<br>    Defendant. ) | Case No. 2:17 CV 75 ACL |

## **MEMORANDUM**

Plaintiff Robert P. Yates, Jr. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Yates' severe physical and mental impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### **I. Procedural History**

Yates filed his applications for DIB and SSI on June 11, 2014, and June 30, 2014,

respectively, claiming that he became unable to work on May 26, 2011.[1] (Tr. 215, 241.) In his Disability Report, he alleged disability due to bipolar disorder, chronic body pain, migraines, degenerative bone disease, acid reflux, thyroid problems, anemia, and arthritis. (Tr. 261.) Yates was 37 years of age at the time of his alleged onset of disability. His claims were denied initially. (Tr. 113-17.) Following an administrative hearing, Yates' claims were denied in a written opinion by an ALJ, dated September 27, 2016. (Tr. 12-24.) Yates then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on September 27, 2017. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Yates argues that the ALJ "failed to give great weight to the consultative examiner that she hired post hearing." (Doc. 19 at p. 7.)

## II. The ALJ's Determination

The ALJ first found that Yates met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 14.) He further found that Yates has not engaged in substantial gainful activity since May 26, 2011, the alleged onset date. *Id.* In addition, the ALJ concluded that Yates had the following severe impairments: lumbar spondylosis, migraines/chronic headaches, bipolar affective disorder, dissociative identity disorder,[2] insomnia,

---

[1] Yates previously filed applications for DIB and SSI in June 2011, which were denied by an ALJ on April 15, 2013. (Tr. 80-96.) The Appeals Council declined to grant review. (Tr. 100-04.) Yates filed a complaint in federal court, which he later dismissed. (Tr. 105-08.) Thus, the period at issue in this action begins on April 16, 2013, the date after the last final denial of his previous claim.

[2] Dissociative identity disorder, formerly multiple personality disorder, is the presence of two or more distinct identities or personality states that recurrently take control of behavior. The disorder reflects a failure to integrate various aspects of identity, memory, and consciousness.

and vertigo. *Id.* The ALJ found that Yates did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15.)

As to Yates's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can push and/or pull as much as he can lift and/or carry; can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crawl, or crouch; can occasionally be exposed to vibration, but never be exposed to moving mechanical parts, unprotected heights or have driving a motor vehicle as part of his job duties; is limited to performing simple, routine, and repetitive tasks and making simple work-related decisions; can occasionally respond appropriately to supervisors and/or coworkers but never to the public.

(Tr. 17.)

The ALJ found that Yates was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as final assembler, document preparer, and table worker. (Tr. 22-23.) The ALJ therefore concluded that Yates was not under a disability, as defined in the Social Security Act, from May 26, 2011, through the date of the decision. (Tr. 23.)

---

*Diagnostic and Statistical Manual of Mental Disorders,* 291-93 (5th ed., American Psychiatric Association 2013).

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 11, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on June 30, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 24.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment

or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related

activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Yates argues that the ALJ failed to give great weight to the consultative examiner in determining Yates' mental RFC.[3]

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of his limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d

---

[3]Yates does not challenge the ALJ's findings regarding his physical impairments. Consequently, the undersigned's discussion is limited to Yates' mental impairments.

926, 932 (8th Cir. 2016).

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

At the conclusion of the administrative hearing, the ALJ indicated that he would grant Yates' request for a consultative mental examination. (Tr. 60-61.) Yates subsequently saw James L. Tichenor, Ph.D., for a psychological consultation on July 18, 2016. (Tr. 731-33.) Dr.

Tichenor's opinions are the subject of Yates' claim.

Dr. Tichenor found Yates was alert and vigilant and responded to questions cooperatively, but with occasional intensification of emotion, "which suggested a potential for excessive emotional response." (Tr. 731.) Yates' speech quantity was talkative to the point Dr. Tichenor had to interrupt a few times to get him "back on track." *Id.* Yates was oriented, his attention and concentration were "near average," his condition and memory were average, his intellectual functioning was "likely low average," and his thought processes were "generally logical but at times rambling." (Tr. 731-32.) Yates reported that he has three personalities that "come out when he is upset and the back of his head hurts." (Tr. 732.) He referred to his personalities as "Psycho," "Demon," and "Chase," with Chase being the mild one and the other two being self-descriptive. *Id.* Yates stated that Psycho "tries to control his thoughts," and the others "are always trying to harm him." *Id.* Yates' mood was generally calm during the examination, but tense with a raised voice a few times, "suggesting ready outbursts of emotion." *Id.* Yates described his mood as frequent episodes of "yelling and screaming at someone." *Id.* He reported experiencing episodes of rage, which had been occurring more frequently since he had been off his medications the past year. *Id.* Yates' insight and judgment appeared poor, but adequate for him to manage money. *Id.* He denied current suicidal ideation or intent to harm himself, although reported one past suicidal gesture "by preparation of pills and alcohol that he was about to take when his dog somehow stopped him." *Id.* Yates reported a "rough" childhood involving physical abuse by his father and sexual molestation by a family friend. *Id.* He was expelled from school in his senior year, but obtained his GED. *Id.* Yates worked as a truck, bus, and cab driver, with the longest employment as a cab driver for nine years. *Id.* Yates lived with his wife, step-daughter, son, and grandbaby. *Id.* Yates stated that he spends most of his days in

his bedroom because he gets into arguments and yells otherwise. *Id.* He reported that he attends church, and planned to go to church that night from 5:00 to 8:00 p.m. *Id.* Yates reported depressive symptoms and anxiety symptoms in the severe range; and reported a number and severity of bipolar symptoms to indicate a very high likelihood of this diagnosis. (Tr. 732-33.) Dr. Tichenor provided the following Summary/Conclusions:

> Mr. Yates presented as an emotionally labile individual who has a long history of acting out behaviors and social interaction difficulties. Given the reported history of acting out behaviors, the current description of social abruptness and verbal and physical aggression, and current presentation of poor emotional control, his condition appears to be chronic and presently problematic. He appears to have very poor awareness of how others influence him and that the manner in which he responds emotionally is inappropriate. His ability to understand and remember instructions, to attend to complete tasks, and to interact socially and adapt are so deficient as to make full time gainful employment extremely unlikely. He indicated that he has had better control of his behaviors with medication management in the past. However, he does appear to be marginally capable of managing money independently. He said that he makes a list of bills each month and attempts to pay them. He believes that he cannot work because of his 'mental state' which often leads to inappropriate outbursts and social/physical confrontations.

(Tr. 733.) He diagnosed Yates with bipolar I disorder, most recent episode manic, with psychotic features; and posttraumatic stress disorder with possible dissociative symptoms. *Id.*

Dr. Tichenor completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), in which he found that Yates had extreme limitations in his ability to make judgments on complex work-related decisions and interact appropriately with supervisors; marked limitations in his ability to understand and remember complex instructions and carry out complex instructions, interact appropriately with the public and co-workers, and respond appropriately to usual work situations and changes; and moderate limitations in his ability to understand, remember, and carry out simple instructions. (Tr. 734-35.) As support for these findings, Dr.

Tichenor cited Yates' history, and Dr. Tichenor's observation of emotional lability and thought difficulty. (Tr. 734.)

The ALJ assigned "little weight" to the opinions of Dr. Tichenor. (Tr. 21.) As to Dr. Tichenor's statement that Yates' mental state made substantial gainful activity "extremely unlikely," the ALJ accurately noted that this was not a medical opinion but, rather an issue reserved to the Commissioner. *See Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (internal marks omitted)); 20 C.F.R. § 404.1527(e)(1).

The ALJ further found that Dr. Tichenor's interview with Yates was "atypical of the encounters in the rest of the record." (Tr. 21.) Specifically, while Dr. Tichenor "noted behaviors he found disturbing, it is interesting to note that there are not similar observations recorded elsewhere in the record." *Id.* The ALJ also found it significant that Dr. Tichenor's findings were based on a single encounter when Yates had been off his psychotropic medications for a year. *Id.* He stated that this is especially true given Yates' own sworn testimony that his psychotropic medications control his symptoms. *Id.* The ALJ indicated that Dr. Tichenor's opinions were "extreme" given the findings of the examination. *Id.* He noted that much of Dr. Tichenor's assessment was based on Yates' subjective reports. *Id.*

The undersigned finds that the ALJ provided sufficient reasons for assigning little weight to Dr. Tichenor's opinions. First, the medical record does not support the extreme findings noted by Dr. Tichenor. Yates received treatment at Complete Family Medicine for his various complaints, including mental impairments of bipolar disorder and "multiple personality," from

April 2013 to August 2014. (Tr. 424-530.) Yates reported symptoms of bipolar disorder beginning in 2011, which were relieved with Seroquel.[4] (Tr. 460.) On examination, Yates' examining providers consistently found that he was oriented to time, place, person and situation; his mood and affect were appropriate; his behavior was appropriate; but his insight and judgment were poor. (Tr. 426, 437, 447, 462, 468, 487, 510, 521.) Yates was prescribed psychotropic medications, which were effective in treating his symptoms. (Tr. 436, 460.)

Yates received treatment at Mark Twain Behavioral Health for his impairments from June 2014 to August 2015. (Tr. 367-413, 585-662.) At his initial evaluation on June 26, 2014, Yates reported that he had been doing "okay" until the previous month, at which time he started experiencing increased irritability, especially in dealing with his stepson. (Tr. 585.) Yates denied any suicidal or homicidal thoughts and stated that he had never tried to harm others. (Tr. 586.) He reported that his memory was "pretty fair," and his concentration and attention span "depend on what he is doing." *Id.* Yates' insight and judgment were found to be fair and his motivation was good. *Id.* Nurse Practitioner Reggie Westhoff diagnosed Yates with bipolar disorder I, with a GAF score of 50.[5] (Tr. 587-58.) He adjusted Yates' medications. (Tr. 588.) On subsequent visits, Mr. Westhoff consistently noted Yates' complaints of problems getting along with his stepson, but found no abnormalities on examination other than "fair judgment and insight. (Tr. 590-662.) He assessed a GAF score of 52.[6] (Tr. 592-631.) Yates reported

---

[4] Seroquel is an anti-psychotic drug used to treat certain mental/mood conditions. WebMD, http://www.webmd.com/drugs (last visited January 18, 2019).

[5] A GAF score of 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV–TR*").

[6] A GAF score of 52 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See DSM IV–TR* at 34.

increased anxiety on some visits due to parenting issues with his stepson, and due to his wife leaving him. (Tr. 615, 629, 652.) Yates' psychotropic medications were adjusted. *Id.* On June 15, 2015, Yates reported that he was happier after meeting a woman online. (Tr. 657.)

The medical evidence of record does not support the opinions of Dr. Tichenor regarding Yates' limitations. Rather, the evidence demonstrates that Yates' mood and behavior were typically normal on examination, aside from Yates' periodic complaints of increased irritability usually associated with parenting or marital problems. The record, including Yates' own testimony (Tr. 44), reveals that Yates' mental impairments responded well to medication. Noticeably absent from the record are any observations by examining providers of Yates' multiple personalities.

The ALJ was not required to assign great weight to the opinion of Dr. Tichenor. Dr. Tichenor saw Yates on one occasion for a consultative examination at a time when Yates had been off his psychotropic medications for a year. Even so, Dr. Tichenor did not observe abnormalities on examination to support the extreme limitations he found. For example, Yates was cooperative, oriented, displayed normal attention and concentration, exhibited a logical thought process, and his mood was generally calm. (Tr. 731-32.) Significantly, although Yates reported having multiple personalities, Dr. Tichenor did not observe these personalities. Dr. Tichenor also did not observe any inappropriate or aggressive behaviors during his examination, which was a basis for his opinion that Yates would have difficulty sustaining employment. As noted by the ALJ, Dr. Tichenor's opinions appear to be based primarily on Yates' subjective reports. Also notable is the fact that Yates was able to sustain employment for many years as a cab driver despite his impairments.

State agency psychologist Barbara Markway, Ph.D., completed a Psychiatric Review

Technique and Mental Residual Functional Capacity Assessment on August 26, 2014. (Tr. 68-75.) Dr. Markway found that Yates had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 68.) She expressed the opinion that Yates retained the ability to understand and remember simple instructions; carry out simple work instructions; maintain adequate attendance and sustain an ordinary routine without special supervision; interact adequately with peers and supervisors in a work setting where social interaction is not a primary job requirement; and adapt to minor changes in a work setting. (Tr. 73.)

The ALJ indicated he was assigning "great weight" to Dr. Markway's opinion, as it was consistent with the record as a whole. (Tr. 20.) The ALJ explained that he was not adopting the opinion in its entirety, as the record did not indicate Yates was unable to adapt to more than minor changes in the work setting. *Id.*

The ALJ made the following determination regarding Yates' mental RFC:

> [Yates] is limited to performing simple, routine, and repetitive tasks and making simple work-related decisions; can occasionally respond appropriately to supervisors and/or coworkers but never to the public.

(Tr. 17.)

Yates contends that the ALJ erred in failing to give great weight to the opinion of Dr. Tichenor, and in relying instead on the opinion of Dr. Markway. The Court finds that the ALJ properly considered the opinion of Dr. Markway. As a state agency physician, Dr. Markway is a highly qualified expert in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Although Yates asserts that Dr. Markway's opinion is entitled to less weight because it was provided prior to some of the medical evidence, "Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily

be discounted because it is not based on those records." *Barker v. Colvin*, No. 14–0900–CV–W–ODS–SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015). "Indeed, such a timeline is not uncommon in the context of review as claimants will update their medical records and other evidence of record throughout the course of the pendency of their claim and the medical or psychological consultant will necessarily review the file as it is at a certain point in time." *Ward v. Berryhill*, No. 1:15–CV–00225–NCC, 2017 WL 476403, at * 5 (E.D. Mo. Feb. 6, 2017).

The mental RFC formulated by the ALJ is supported by substantial evidence on the record as a whole. The ALJ properly considered and weighed the opinion evidence in making his determination. The RFC is supported by the treatment notes of Yates' treating mental health providers, the opinion of the State agency psychologist, as well as the examination findings of Dr. Tichenor. The ALJ adequately took into account the symptoms Yates experiences from his mental impairments when limiting him to a reduced range of simple work, with limited contact with supervisors and co-workers and no contact with the public. Yates has failed to establish the presence of any greater limitations than those found by the ALJ.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of March, 2019.